**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**WILL DOE and SHERRY DOE, as**
**parents and next friend of WONDER DOE**                           **PLAINTIFFS**

**V.**                                    **4:06CV0911 JMM**

**NANCY ROUSSEAU, Individually and in her official**
**capacity as Principal of Central High School of the**
**Little Rock School District; ROY G. BROOKS,**
**Individually and in his official capacity as**
**Superintendent/Chief Executive Officer of the**
**Little Rock School District; THE BOARD OF**
**EDUCATION OF THE LITTLE ROCK**
**SCHOOL DISTRICT, a Public Body Corporate**               **DEFENDANTS**

<u>ORDER</u>

Pending is the Defendants' Motion for Summary Judgment.  The Plaintiffs have filed a

response in opposition to the Motion regarding exhaustion issues.  The Defendants have replied.

Plaintiffs have filed a response in opposition to the entire Motion for Summary Judgment to

which the Defendants have also replied.[1]  The Court has reviewed all of these pleadings

including the attached exhibits, transcripts from the preliminary injunction hearing held on

August 15, 23, and 24, 2006, and the relevant law.  For the reasons set forth below, the

Defendant's Motion for Summary Judgment is GRANTED.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

---

[1]  Defendants argue that Plaintiffs' response was not timely filed.  In fact, Plaintiffs'
attorney made an oral motion for one-day extension of time to file the response which the Court
granted.  *See Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 579 (8th Cir. 2006).

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because
> they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent's burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue.  If the respondent fails to carry that
> burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

<u>Undisputed Facts</u>

Plaintiff Wonder Doe is a tenth grade student at Central High School ("Central") of the

2

Little Rock School District ("LRSD").  Prior to the sixth grade, Wonder attended four different schools.  For the first part of sixth grade Wonder attended Henderson Middle School in Little Rock.  The Doe family relocated to Atlanta, Georgia during the second half of Wonder's sixth grade year where she attended Inman Middle School.  Her family moved back to Little Rock and Wonder attended Henderson Middle School during the eighth grade.  Wonder has attended Central High School since the ninth grade during the 2005-2006 school year.

According to Wonder's mother, Sherry Doe, Wonder was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") when she was five years old.  Wonder's ADHD manifests itself in Wonder's behavior.  Although every school Wonder attended was aware of her diagnosis, the first time she was provided with a written 504 accommodation plan was when she was a student at Henderson Middle School in the Little Rock School District.  The plan was not primarily intended for implementation at Henderson. The Does sought placement of the 504 accommodation plan in April, 2004 primarily for implementation at Central Hugh School the following year.

Prior to the 2005-2006 school year, Wonder competed for a spot on the Central High School cheerleader team.  She did not request an accommodation for her ADHD for the 2005-2006 tryouts.  Wonder won a spot on the squad.  Wonder competed again for a spot on the 2006-2007 cheerleading squad.  This time she was not selected for the squad.

Plaintiffs filed this suit on August 2, 2006 under 20 U.S.C. §§ 1400-1477, Individuals with Disabilities in Education Act ("IDEA"); the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq.; 42 U.S.C. §§ 1983 and 1985, and the due process and equal protection clauses of the 14th Amendment of the United States Constitution seeking to have Wonder placed on the

cheerleading squad.  Plaintiffs' allege that Defendants failed to implement several of the accommodations in Wonder's 504 plan.  Plaintiffs also complain that a more formal behavior modification plan should have been made a part of Wonder's Section 504 accommodation plan.

Plaintiffs filed a motion for preliminary injunction asking the Court to place Wonder on the Central cheerleading squad.  A hearing was held on August 15, 23, and 24, 2006.  At the conclusion of the hearing, the Court denied the motion for temporary injunction stating, in part, that the likelihood of success on the merits of the case was low.

<u>Discussion of the Law</u>

The IDEA requires states to provide a disabled student with a free appropriate public education.  *Gill v. Columbia 93 School Dist.,* 217 F.3d 1027, 1035 (8th Cir. 2000)(citing *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1373 (8th Cir. 1996)).  Section 504 of the Rehabilitation Act ("Section 504" or "504") requires the same.  29 U.S.C. § 794(a), 34 C.F.R. § 104.33.  While the IDEA and Rehabilitation Act are complementary regarding educational obligations to children with disabilities, they address different injuries and, thus, require different proof.   Specifically, the Rehabilitation Act offers relief from discrimination, whereas the IDEA offers relief from inappropriate educational placement, regardless of discrimination. *Gabel ex rel. L.G. v. Board of Educ. of Hyde Park Central School Dist.*, 368 F.Supp.2d 313 (S.D.N.Y. 2005).

One of the Congressional policies behind the IDEA is to allow disabled children to be educated alongside their non-disabled peers.  Under the Act, disabled students are to be educated in a mainstream classroom whenever possible.  *Gill,* 217 F.3d at 1035 (citing *Board of Educ. v. Rowley*, 458 U.S. 176, 202, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 612 (8th Cir. 1997)).  In order to accomplish these goals, a specialized

plan must be developed for each disabled student, taking into account that child's academic and functional capabilities. 20 U.S.C. § 1414(d)(1)(A). The services that a school district will provide to a child are to be summarized in a written statement called an individualized education program or IEP. *Id.*; *See* Ark. Code Ann § 6-41-217.

The IDEA also includes an elaborate set of procedures intended to insure parents' participation in the ongoing development of their child's educational program. *Sch. Comm. of the Town of Burlington v. Dept. of Educ. of Mass.*, 471 U.S. 359, 368, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). If a child requires special education, a school district must convene a team to formulate an IEP in light of the child's abilities and parental views about the child's education. 34 C.F.R. §§ 300.343(b)(2), 300.346(a)(1). The parents, the child's teacher, and a school official knowledgeable about special education must be included on the team which devises and reviews the IEP, and parents are free to invite other individuals with expertise to participate. *Burlington*, 471 U.S. at 368, 105 S.Ct. 1996. The IEP must be reviewed at least once a year, and it should be periodically revised in response to information provided by the parents and to ongoing evaluations of the child's progress. *Gill v. Columbia 93 School Dist.,* 217 F.3d 1027, 1035 (8th Cir. 2000). Throughout this process parents must be notified of their procedural rights under the IDEA, which include the right to an administrative hearing to evaluate the IEP team's decisions. 20 U.S.C. §§ 1415(b)(6), 1415(f), 1415(i)(2). School districts and state education departments may be held liable for failing to meet their obligation under IDEA. *Id.* at §§ 1415(a), (i)(2).

The IDEA also provides for judicial review in state or federal court to "[a]ny party aggrieved by the findings and decision" made after the due process hearing. *Burlington*, 471 U.S. at 369, 105 S.Ct. at 2002; 20 U.S.C. § 1415(i)(2)(A). The IDEA confers on the reviewing

court the following authority:

> [T]he court shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

§ 1415(i)(2)(C).

Exhaustion of Administrative Remedies

The IDEA requires exhaustion of these administrative remedies prior to filing a complaint in federal court. *See* 20 U.S.C. § 1415(l). Exhaustion is a prerequisite to jurisdiction in federal court, whether the claim is brought under the IDEA, the "constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities. . . ." 20 U.S.C.A. § 1415; *Blackmon ex rel. Blackmon v. Springfield R-XII School Dist.*, 198 F.3d 648, 655-56 (8th Cir.1999). "The exhaustion requirement permits agencies 'to exercise discretion and apply their expertise, ... allow[s] complete development of the record before judicial review, ... prevent[s] parties from circumventing the procedures established by Congress, and ... avoid[s] unnecessary judicial decisions by giving the agency an opportunity to correct errors." ' *Blackmon,* 198 F.3d at 656 (internal citation omitted). "Courts recognize only three exceptions to the exhaustion requirement, including futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or practice of general applicability that is contrary to law." *Id.* The burden rests on the plaintiff to demonstrate that they have exhausted administrative remedies under the IDEA before invoking a court's jurisdiction. *See id.*

Defendants contend that the Plaintiffs failed to exhaust their administrative remedies as required by the IDEA.  It is undisputed that the Plaintiffs did not have a due process hearing regarding their complaints about Wonder's 504 plan, its implementation, or their cheerleading concerns.  Defendants point out that the Plaintiffs were informed of their right to pursue a due process hearing with the Arkansas Department of Education.  They contend that Sherry Doe's testimony during her deposition confirms the fact that she was repeatedly provided a list of rights under Section 504 of the Rehabilitation Act.

> Q.    And at each of these meetings, including the October 11th meeting, you were provided a list of your rights under Section 504, correct?
> A.    Yes.
> Q.    So you knew that if you disagreed with the decisions of the 504 team you could request an impartial due process hearing?
> A.    I mean it wasn't really a disagreement.  It was for the teachers to start e-mailing or communicating Wonder's behavior and progress.
> Q.    Right.  Right.
> A.    So it wasn't at that point where I needed to have –
> Q.    I understand.  I understand that.
>        Bur you were aware, even back then, even before there was any disagreement, that number 17 on your list of rights is you have the right to initiate an impartial due process hearing if you wish to contest any action of the District with regard to your child's identification, evaluation or placement under Section 504.  Right?
> A.    Yes.

(Sherry Doe Dep. at p. 75-76).   Defendants further argue that Plaintiffs were not only aware of their right to request a due process hearing but they knowingly failed to request one.

> Q.    But no one on behalf of your daughter ever submitted a written request to the Little Rock School District for an impartial due process hearing procedure, did they?
> A.    Not to my knowledge.

(Id. at p. 78).

Plaintiffs argue that Will Doe, Wonder's father, attempted to exhaust their administrative

remedies by appealing to Defendant Rousseau, the Director of Exceptional Children Barbara

Barnes, the Associate Superintendent Junious Babbs, the Deputy Superintendent Hugh

Hattabaugh, the former Superintendent Dr. Roy Brooks, and the Board of Education itself.

Plaintiffs further attempted to schedule mediation between the parties with the University of

Arkansas at Little Rock Law School mediation department.  Plaintiffs claim that the reference to

Mrs. Doe's testimony during her deposition was "misplaced and taken out of context."  Plaintiffs

point to Sherry Doe's affidavit testimony given on July 30, 2007.  Sherry Doe stated that neither

"Ms. Rousseau, Ms. Medcalf nor Ms. Barnes informed me or my husband, Will Doe, that we had

a right to pursue a due process hearing with the Arkansas Department of Education regarding our

dissatisfaction with Wonder's educational program." (Sherry Doe Aff. at p. 2).

After review of all of the evidence on this issue, the Court finds that Plaintiffs have failed

to exhaust their administrative remedies.  There is no evidence that exhaustion would have been

futile, that adequate relief was unavailable through the administrative procedures, or that the

policies in place were contrary to the law.  The Court finds that the Plaintiffs, particularly Sherry

Doe, were instructed about their right to appeal decisions regarding Wonder's 504 plan and its

implementation, including how to avail themselves of the administrative process provided by the

Arkansas Department of Education.  (Sherry Doe Dep. at p. 75-76);(Pl.'s Ex. 1 and 1A).  Further,

Sherry Doe had been an employee of the LRSD for many years and was familiar with its

processes.  *See also Monahan v. State of Neb.,*  687 F.2d 1164, 1169 (8th Cir. 1982)(one letter

giving parent notice of right to due process hearing under 504 in addition to parent's experience

in the system was sufficient).  Mrs. Doe's subsequent contradictory statements in her affidavit are

not enough to create a question of fact under Rule 56.  *Camfield Tires, Inc. v. Michelin Tire*

*Corp.,* 719 F.2d 1361, 1363 (8th Cir. 1983).

The evidence shows that Plaintiffs utilized several avenues to complain about Wonder's teachers and their distrust of Wonder's cheerleading sponsors, including verbal discussions with Ms. Rousseau, Barbara Barnes, Junious Babbs, and telephone calls to Dr. Roy Brooks.  Plaintiffs also wrote a letter to Hugh Hattabaugh and Oliver Dillingham.  However, Plaintiffs' letters merely addressed the fact that  their daughter did not make the 2006-2007 cheerleader squad, not any accommodation for her disability under 504 or the IDEA.  (Preliminary Injunction Trans. at p. 165).   In fact, Mr. Dillingham's response to Plaintiffs reminded them of their right to an impartial due process hearing upon request.  (Ex. 1 to Pl's Complaint).

Even in the face of repeated notice regarding the procedure required to initiate a due process hearing, Plaintiffs failed to pursue the appropriate process.  This failure is significant, because under well-established judicial interpretations of the IDEA the Does had an obligation to exhaust their administrative remedies with regard to the issues upon which they seek judicial review.  *Blackmon ex rel. Blackmon v. Springfield R-XII School Dist.,* 198 F.3d 648, 655 -656 (8th Cir. 1999)(citing 656 20 U.S.C. § 1415(i)(2)(A) (stating that a party aggrieved by the due process hearing panel's decision has the right to bring a civil action "with respect to the complaint presented"); *see also, e.g., Honig v. Doe*, 484 U.S. 305, 326-27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Independent Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 560 (8th Cir. 1996); *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir.1996); *Babicz v. School Bd.*, 135 F.3d 1420, 1422 (11th Cir.1998), cert. denied, 525 U.S. 816, 119 S.Ct. 53, 142 L.Ed.2d 41 (1998); *Garro v. Connecticut*, 23 F.3d 734, 737 (2nd Cir.1994); *Family & Children's Center, Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1056 (7th Cir. 1994), *cert. denied*, 513 U.S. 961,

115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873

F.2d 933, 935 (6th Cir. 1989) (interpreting the IDEA's precursor, the Education of the

Handicapped Act.)). Because Plaintiffs have not exhausted their administrative remedies under

the IDEA, the Court lacks subject matter jurisdiction to consider their claims.

<u>Rehabilitation Act</u>

Notwithstanding the Court's ruling on the exhaustion issue, the Court finds that the

Plaintiffs have failed to set forth a claim under the Rehabilitation Act regarding Wonder's failed

attempt to make the Central High School cheerleading squad.  Plaintiffs contend that Wonder

failed to gain a spot on the cheerleading squad in 2006-2007 because there was no

accommodation for her disability and/or because the Defendants discriminated against her on the

basis of her disability.

Under § 504, a plaintiff must show that he was a qualified individual with a disability and

that he was denied the benefits of a program, activity, or services by reason of that disability. *See*

29 U.S.C. § 794(a).  To successfully prove a claim under section 504, "a plaintiff must

demonstrate not only that there was a failure to provide an appropriate education, he or she must

also demonstrate bad faith or gross misjudgment." *Monahan v. State of Nebraska*, 687 F.2d

1164, 1170-71 (8th Cir.1982); *see also Heidemann v. Rother*, 84 F.3d 1021, 1032 (8th Cir.1996);

*Brantley By and Through Brantley v. Independent Sch. Dist. No. 625*, St. Paul Pub. Sch., 936

F.Supp. 649, 657 (D.Minn.1996); *Johnston by Johnston v. Ann Arbor Pub. Schools*, 569 F.Supp.

1502, 1506 (E.D.Mich.1983).  The line of cases following *Monahan* hold that as long as the state

officials involved have exercised professional judgment, in such a way as not to depart grossly

from accepted standards among educational professionals, there can be no liability under section

10

504. *See Heidemann*, 84 F.3d at 1032. Courts are not competent to substitute their own judgment for that of professionals who are trained to educate handicapped students and, therefore, can only ensure that the decisions made were not grossly errant.

At the close of the preliminary injunction hearing, the Court found that Wonder Doe was disabled and that she was qualified for the position of cheerleader.   However, the Court found that there was no connection based upon the evidence at the hearing to support Plaintiffs' contention that Wonder's failure to make the cheerleading squad had anything to do with her 504 disability.  The Court stated:

> Wonder Doe was allowed to compete and was given the same opportunity as any other competitor.  From the evidence that her mother gave, she was not handicapped in any way in the performance that she gave during the tryouts, and she gave her best effort.  And I didn't hear any evidence that her diagnosed disability had any adverse effect on her ability to compete for the position.  So the allegation is that the school officials, then, conspired to fix the competition and ensure that she would not be selected; that is, that there was a conspiracy to discriminate against her because of her disability and essentially deny her that position.  And the evidence that I heard does not support that claim in my opinion.

(Preliminary Injunction Hearing Transcript, at p. 521).  Plaintiff has not provided any additional evidence to support the allegation that school officials conspired to fix the cheerleader try-out and discriminate against Wonder because of her disability rather than Wonder's performance on the day of the try-outs.  They have therefore failed to establish a required element of their claim. *See Davis v. Francis Howell School Dist*.  138 F.3d 754, 756 (8th Cir. 1998)*; DeBord v. Board of Educ*., 126 F.3d 1102, 1105-06 (8th Cir.1997).

Plaintiffs also make numerous allegations about the relationships between Wonder and her cheerleading sponsors, including allegations regarding Wonder's eligibility to participate in

the national cheerleading competition.  It is apparent that there were some personality conflicts

between Wonder and Amy Doe, her cheerleading sponsor and former math teacher.  Further,

there are allegations that Gloria Doe discriminated against Wonder by, among other things,

showing favoritism to her daughter in the handling of the national cheerleading competition.

While some of the allegations are disputed between the parties, the Court finds that these

disputes of fact are immaterial.  There is no evidence in the record that the actions of Ms.

Rousseau, Amy Doe or Gloria Doe were based upon Wonder's disability or that Wonder was

discriminated against based on her handicap, as required for relief under 504.   Further, the Court

finds that Plaintiffs have failed to prove that the Defendants acted in bad faith or with gross

misjudgment.  *See Monahan,* 687 F.2d at 1170("We do not read § 504 as creating general tort

liability for educational malpractice.").

> [C]omplaints regarding satisfaction with the particulars of [a disabled student's]
> educational experience are not the concern of this Court. It is not the job of the federal
> court system to exhaustively police the complex interactions between teacher and student
> and assure that each child in the dozens of school districts . . . over which this Court
> presides is educated in a manner consistent with his parents' wishes. Such a duty would
> clearly place an impossible burden on the federal court system. The Court's role is merely
> to assure that the school district is providing each student with an educational process that
> is adapted to that child's needs. Beyond this, the Court must not venture.

*K.U. By and Through Michael U. v. Alvin Independent School Dist.*, 991 F.Supp. 599, 605-606

(S.D. Tex. 1998).  Accordingly, the Court finds that Plaintiffs have failed to set forth a material

issue of genuine fact with regard to any claim under the Rehabilitation Act.

<u>IDEA</u>

The crux of Plaintiffs 504 allegations involve Wonder's behavior during the school year,

the numerous disciplinary referrals, the alleged failure of the 504 plan to remedy Wonder's

12

behavioral issues, and the Defendants' failures to follow the procedures required by the IDEA.

Plaintiffs contend that Wonder has been denied a Free and Appropriate Public Education

("FAPE").  They ask the Court to find that the accommodations provided for her under 504 were

not developed or implemented by the Defendants on a good faith basis.  They request injunctive

relief in order to correct the systemic failures of the Defendants.  In addition, they request

monetary relief in order to compensate themselves and Wonder for any resulting harm.

As Plaintiffs suggest, there is evidence before the Court of IDEA procedural failures by

the Defendants throughout the course of the school year.  The Court finds, however, that the

Defendants' procedural failures in this case were *de minimus* and did not affect Wonder's FAPE.

*See School Bd. of Independent School Dist. No. 11 v. Renollett,* 440 F.3d 1007, 1011 (8th Cir.

2006).  It is clear that the policies behind the IDEA have benefitted Wonder.  There was an

agreed upon IEP for Wonder which was in place at the beginning of the 2005-2006 school year at

Central High School.  She was educated alongside her non-disabled peers.  She participated in

advanced placement and college preparatory courses, as well as non-curricular activities.

(Wonder Doe Dep at p. 7).  She has received passing grades in all of her classes and has

advanced from grade to grade along with her peers.  (Will Doe Dep. at p. 9).  In fact, Wonder and

the Plaintiffs expect Wonder to graduate from high school and to attend college.  (Sherry Doe

Dep. at 129; Wonder Doe Dep. at p. 7).

Further, Plaintiffs have been afforded the opportunity to review Wonder's records, meet

with Wonder's teachers, school administrators and IEP team on numerous occasions.  Although

Plaintiffs were not always satisfied with the decisions made in the meetings, it is undisputed that

the Plaintiffs met with school officials on an almost weekly basis to discuss Wonder's behavior

13

and on many occasions review Wonder's accommodation checklist.  (Def's Ex. 11 to the

Preliminary Inj. Hearing).  At Sherry Doe's request, the Defendants' convened a meeting and

created a behavior modification plan for Wonder in January 2006.  (Def's Ex. 12 to the

Preliminary Inj. Hearing).  Plaintiffs have been notified of their rights with regard to Wonder's

504 plan.  According to the evidence, Defendants have expended considerable time and effort to

keep the Plaintiffs informed and to facilitate Plaintiffs' participation in the on-going development

of Wonder's educational program.  Defendants' alleged procedural failures can only be classified

as negligence.  Therefore, the Court finds that Plaintiffs have failed to set forth a material issue of

genuine fact with regard to any claim under the IDEA.

Constitutional Due Process Claim

In the Complaint, Plaintiffs allege that the Defendants denied Wonder due process and

equal protection of the law as stated in the Fourteenth Amendment to the Constitution of the

United States.  The Due Process Clause of the Fourteenth Amendment provides that "[n]o State

shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1. In an action under 42 U.S.C. § 1983 asserting a due process violation, a

plaintiff must prove that he was deprived of a constitutionally protected life, liberty, or property

interest, and then identify a state action that resulted in a deprivation of that interest.  Plaintiffs'

due process argument is simply another iteration of their Rehabilitation Act claim and it fails for

the same reason: there is no evidence that the Defendants violated the Rehabilitation Act by

denying Wonder a free appropriate public education.

Other Claims

The Court has attempted to analyze each of the substantive claims presented by Plaintiff

14

in their Complaint.  The Court finds that the Plaintiffs have failed to set forth facts sufficient to state any additional claims which are not addressed in this order.

In conclusion, the Court finds that the Plaintiffs' have failed to exhaust their administrative remedies as required under 20 U.S.C. § 1415(l).  Moreover, the Court finds that Defendants' Motion for Summary Judgment (Docket # 32) is GRANTED regarding the merits of Plaintiffs' claims. The Clerk is directed to close the case.

IT IS SO ORDERED this   23   day of August 2007.

James M. Moody
United States District Judge

15